609 S.E.2d 917

**Bernard BOGGS, as Administrator of the Estate of Hilda Boggs, Deceased, as Personal Representative of the Statutory Beneficiaries of the Wrongful Death Claim Herein Asserted and in his Own Right, Plaintiff Below, Appellant**

v.

**CAMDEN–CLARK MEMORIAL HOSPITAL CORPORATION, United Anesthesia, Inc. and Manish I. Koyawala, M.D., Defendants Below, Appellees**

No. 31757.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 9, 2004.

Decided Dec. 8, 2004.

Dissenting Opinion of Chief Justice Maynard Dec. 8, 2004.

Christopher J. Regan, Esq., Bordas & Bordas, Wheeling, Christopher A. Rinehart, Esq., Columbus, Ohio, Attorneys for Appellant.

Richard A. Hayhurst, Esq., Parkersburg, West Virginia, Attorney for Appellee Camden–Clark Memorial Hospital.

Don R. Sensabaugh, Jr., Esq., C. Benjamin Salango, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, Attorneys for Appellees Manish Koyawala, M.D. and United Anesthesia, Inc.

Victor A. Mullins, Associate Counsel West Virginia Insurance Commission, Charleston, West Virginia Amicus Curiae for the West Virginia Insurance Commission.

Evan H. Jenkins, Esq., Charleston, West Virginia, Amicus Curiae for West Virginia State Medical Association, American Medical Association. West Virginia Hospital Association. West Virginia Health Care Association, West Virginia Orthopaedic· Society; The West Virginia Association of Physician Assistants, the West Virginia Chapter of the American Academy of Family Physicians,

The Physicians Alliance for Reform, The West Virginia Academy of Ophthalmology, The West Virginia Society of Osteopathic Medicine, Inc., The West Virginia Academy of Otolaryngology–Head and Neck Surgery, Inc.

Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheny, PLLC, Morgantown, West Virginia Amicus Curiae for West Virginia Trial Lawyers.

Jeffrey R. White, Esq., Center for Constitutional Litigation, Washington, D.C., Amicus Curiae for American Trial Lawyers Association.

Thomas A. Heywood, Esq., John A. Moore, Esq., Stuart A. McMillan, Esq., Jill E. Hall, Esq., Bowles Rice McDavid Graff & Love LLP, Amicus Curiae for the West Virginia Physicians' Mutual Insurance Company.

Thomas J. Hurney, Jr., Esq., Jackson Kelly PLLC, Charleston, Larry W. Chafin, Esq., Steptoe & Johnson, PLLC, Clarksburg, West Virginia Amicus Curiae for Defense Trial Counsel of West Virginia.

Edward J. George, Esq., Robinson and McElwee PLLC, Charleston, West Virginia Amicus Curiae for Charleston Health Associates, Inc. d/b/a Physicians Alliance of West Virginia.

MCGRAW, Justice:

## I.

### FACTS

On September 28, 2001, Hilda Boggs, age 50, slipped on a wet floor while at work and broke her ankle. Her family doctor referred her for treatment at Camden–Clark Memorial Hospital in Parkersburg. Because she had some unrelated health problems, a cardiologist and an endocrinologist evaluated her prior to any surgery for her broken ankle. They recommended spinal, rather than general, anesthesia, and she was scheduled for surgery the next day. Just prior to surgery, anesthesiologist and appellee Dr. Manish Koyawala administered a spinal anesthetic. Ms. Boggs soon stopped breathing and went into cardiac arrest. She died several days later on October 1, 2001.

The appellant, widower Bernard Boggs, alleges that Dr. Koyawala caused Hilda Boggs' death by failing to adhere to the standard of care in anesthetizing her. He has also made claims against appellees United Anesthesia, Inc. (Dr. Koyawala's anesthesiology group) and Camden–Clark Memorial Hospital on theories of negligent hiring and retention, as well as vicarious liability. According to the appellant, following the death of Ms. Boggs, several parties engaged in a cover-up, which led Mr. Boggs to assert additional claims for fraud, the destruction of records, the tort of outrage, and the spoliation of evidence. Mr. Boggs maintains that these claims should be considered to be separate and distinct from his medical malpractice claims.

Mr. Boggs has filed three separate, but nearly identical, lawsuits in this case, which we shall call *Boggs I, II,* and *III*. It appears from the briefs and argument of counsel that the first suit filed by Mr. Boggs on February 28, 2002, was not prosecuted, and because the summons and complaint were not served within 120 days of filing, the court dismissed the case. Mr. Boggs filed suit again June 29, 2003, and this appeal concerns only this second suit, *Boggs II*. However, for clarity we note that due to the actions of the lower court in dismissing *Boggs II*, Mr. Boggs was forced to file a third suit, *Boggs III*, which counsel avers is still pending. Even so, the outcome of this appeal is significant to the parties because of changes to the law applying to all claims filed on or after July 1, 2003.[1] A significant change in the law was the reduction in the amount of non-economic damages a plaintiff could recover,[2] which could greatly reduce Mr. Boggs' damages if he were forced to proceed under the new law with his third complaint.

---

1. See W. Va.Code § 55–7B–10 (b) (2003).

2. See W. Va.Code § 55–7B–8 (2003).

In the suit at issue in this appeal, *Boggs II*, counsel for Mr. Boggs served "notices of claim" and "certificates of merit"[3] on all three defendants/appellees via certified mail in May 2003. Appellant claims to have mailed the documents on May 22, and defendants claim to have received them on May 26. Appellant claims that, due to a clerical error, the certificates of merit (or screening certificates) were blank.[4] Realizing his mistake, appellant then sent the corrected certificates to the defendants via Federal Express, a private overnight courier. Defendants received the correct certificates on June 2, 2003, and on June 29, 2003, Mr. Boggs filed the lawsuit that is the subject of this appeal.

The defendants filed motions to dismiss, alleging that Mr. Boggs failed to provide them with properly executed certificates of merit a full thirty days prior to filing suit. They claimed that the 27–day notice they had between getting the executed certificates and the filing of the second complaint was not sufficient, and that Mr. Boggs' use of Federal Express was not permitted.

Despite the fact that the defendants all had actual notice of the claims against them and that Mr. Boggs' lawsuit contained several claims, such as fraud, that were independent of any medical malpractice, the lower court found that all the claims were barred by the West Virginia Medical Professional Liability Act, W. Va.Code § 55–7B–6, *et seq.* (the "MPLA"). The court went on to dismiss all of Mr. Boggs' claims against all the defendants, even those claims that were not based on medical malpractice.

On January 30, 2004, Mr. Boggs filed a Motion for Leave to Amend his complaint under Rule 15 of the West Virginia Rules of Civil Procedure. At a hearing on February 5, 2004, the lower court denied this motion to amend. Mr. Boggs now appeals. Because we find that Mr. Boggs should have been

permitted to amend his complaint under Rule 15, we conclude that the 2003 changes to the law are inapplicable to this case, and reverse the decision of the lower court.[5]

## II.

## STANDARD OF REVIEW

 Because we do not find it necessary to reach the question of the MPLA's constitutionality, our standard of review in this case is abuse of discretion:

> "A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend." Syllabus Point 6, *Perdue v. S.J. Groves and Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968).

Syl. pt. 5, *Poling v. Belington Bank, Inc.*, 207 W.Va. 145, 529 S.E.2d 856 (1999).

## III.

## DISCUSSION

 We note at the outset that this case, in which a woman being treated for a broken ankle died on the operating table, has never been considered on its merits. Though we reject appellant's request that we consider the constitutionality of the entire MPLA scheme, we agree with his contention that the lower court was wrong to deny him leave to amend his complaint. Our analysis of this case turns upon the application of Rule 15 of the West Virginia Rules of Civil Procedure; before examining the rule, we first take note of the language of the statute in question.

---

3. These terms are contained in W. Va.Code, § 55–7B–6(b) (2003), which we discuss, *infra*.

4. According to the appellant, no party contests the fact that the certificates of merit had been executed prior to the original mailing.

5. We specifically do not reach the issue of the MPLA's constitutionality, as such an analysis is not necessary to reach a decision in this case.

■ The appellees claim that appellant's failure to comply with the MPLA merits the lower court's dismissal of his claim. The applicable section of the statute reads:

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. *Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.*

W. Va.Code, § 55–7B–6(b) (2003) (emphasis added).[6] The statute makes clear that Rule 15 still applies to all cases, whether they be malpractice cases or not. Rule 15(a) states:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.* A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

W. Va. R. Civ. Pro. 15(a) (emphasis added). The point of the emphasized language is that a court should not allow a party to use a procedural device to thwart a decision on the merits, at least in those cases where the party would not be prejudiced by the amendment.[7] This Court has explained that:

"The purpose of the words 'and leave [to amend] shall be freely given when justice so requires' in Rule 15(a) W. Va. R. Civ. P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden as-

---

6. The 2003 changes to the statute did not materially effect the language of this subsection in any way relevant to this appeal.

7. As explained by the authors of our handbook on West Virginia Civil Procedure:

The purpose of this policy statement is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments. Therefore, motions to amend

should always be granted when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet this issue.

Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Litigation Handbook on West Virginia Rules of Civil Procedure § 334 (2002).

sertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue." Syl. pt. 3, *Rosier v. Garron, Inc.,* 156 W.Va. 861, 199 S.E.2d 50 (1973).

Syl. Pt. 6, *Berry v. Nationwide Mut. Fire Ins. Co.,* 181 W.Va. 168, 381 S.E.2d 367 (1989); *see also,* Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Litigation Handbook on West Virginia Rules of Civil Procedure § 334 (2002).

The facts of this case satisfy the three requirements stated above. Clearly, allowing an amended complaint will "permit the presentation of the merits of the action." As we previously noted, Ms. Boggs died over three years ago and our court system has yet to consider the merits of this claim. There is simply no "sudden assertion" that could prejudice the defendants, who have known of the events giving rise to the suit since they occurred, and had notice of appellant's intent to sue from the filing of his first complaint in February 2002. Finally there is no new "issue" for the defendants to "meet." The amendment would simply allow the appellant to correct the technical errors he made when filing his second complaint.

The lower court took the position that, having dismissed the complaint, it had no authority to later allow an amendment. We disagree. As we have stated previously: "The goal behind Rule 15, as with all the Rules of Civil Procedure, is to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." *Brooks v. Isinghood,* 213 W.Va. 675, 684, 584 S.E.2d 531, 540 (2003) (quoting *Doyle v. Frost,* 49 S.W.3d

853, 856 (Tenn.2001) (citations omitted)) (footnote omitted).

Because we find error in not allowing the appellant to amend his complaint, we reverse the lower court on this point. As a result, the changes made to the MPLA as of July 1, 2003, do not apply to appellant's case.[8]

Although our reversal of the lower court's dismissal makes consideration of the appellant's other arguments unnecessary to decide this case, we feel we must also address the lower court's decision to dismiss *all* of appellant's claims, including the non-medical malpractice claims, because of the delay in serving the certificates of merit. Because such a scenario could reoccur, we address it briefly.

■ By the MPLA's own terms, it applies only to "medical professional liability actions," and the Legislature has provided a definition:

(i) "Medical professional liability" means any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient.

W. Va.Code § 55–7B–2(i) (2003).[9] Thus the MPLA can only apply to health care services rendered, or that should have been rendered.

■ Fraud, spoliation of evidence, or negligent hiring are no more related to "medical professional liability" or "health care services" than battery, larceny, or libel. There is simply no way to apply the MPLA to such claims. The Legislature has granted special protection to medical professionals, while

---

**8.** We also note with interest that the Legislature has left some flexibility in the process for filing certificates of merit when strict adherence to the 30 day rules would cause manifest injustice. The 2003 version of the MPLA states:

(d) If a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide

a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim.

W. Va.Code, § 55–7B–6(d) (2003). While this statute does not apply directly to the instant case, we note that this exception to the time limits suggests an understanding that "procedural niceties" alone should not extinguish an injured party's right to his or her day in court.

**9.** Changes effective July 1, 2003 moved this language from subsection (d) to subsection (i).

they are acting as such. This protection does not extend to intentional torts or acts outside the scope of "health care services." If for some reason a doctor or nurse intentionally assaulted a patient, stole their possessions, or defamed them, such actions would not require application of the MPLA any more than if the doctor or nurse committed such acts outside of the health care context. Moreover, application of the MPLA to non medical malpractice claims would be a logistical impossibility. No reputable physician would sign a certificate of merit for a claim of fraud or larceny or battery; how could such a certificate be helpful or meaningful?

Thus we find that the lower court erred in dismissing the appellant's causes of actions in that they were only contemporaneous or related to the alleged act of medical professional liability. Furthermore, we hold that the West Virginia Medical Professional Liability Act, codified at W. Va.Code § 55–7B–1 et seq., applies only to claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability.

IV.

CONCLUSION

For the reasons stated, the order of the Circuit Court of Wood County is reversed, and this case is remanded to the circuit court with directions to reinstate appellant's non-medical practice causes of action, to allow the appellant to amend his complaint and to proceed with this case under the law as it existed prior to July 1, 2003.

Reversed and remanded with directions.

Chief Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Chief Justice, dissenting:

(Filed Dec. 8, 2004)

I believe that the circuit court properly dismissed Appellant's complaint for failure to comply with the clear provisions of the 2001 version of W.Va.Code § 55–7B–6. By reversing the circuit court, the majority opinion disregards plain statutory language and rules in a manner clearly contrary to this Court's recent decision in State ex rel. Miller v. Hon. Stone, 216 W.Va. 379, 607 S.E.2d 485 (2004).

In Miller, Petitioner filed her notice of claim on May 9, 2003, and the certificate of merit on June 20, 2003. However, she filed her medical malpractice complaint on June 9, 2003. The circuit court ruled that Petitioner's complaint could not properly be filed until 30 days after the filing of the certificate of merit, which was July 30, 2003, after the 2003 amendments to the Medical Professional Liability Act became applicable. Petitioner thereafter sought a writ in this Court to prohibit the enforcement of the circuit court's order. This Court denied the writ after finding that the circuit court's order was correct.

The applicable statutory language in both Miller and the instant case provides:

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, together with a screening certificate of merit. The certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) the expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death....

\* \* \* \* \* \*

(d) If a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the claimant shall comply with the provisions of subsection (b) of this section except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim.

(e) Any health care provider who receives a notice of claim pursuant to the provisions of this section must respond, in writing, to the claimant within thirty days of receipt of the claim or within thirty days of receipt of the certificate of merit if the claimant is proceeding pursuant to the provisions of subsection (d) of this section.

(f) Upon receipt of the notice of claim or of the screening certificate, if the claimant is proceeding pursuant to the provisions of subsection (d) of this section, the health care provider is entitled to pre-litigation mediation before a qualified mediator upon written demand to the claimant.

(g) If the health care provider demands mediation pursuant to the provisions of subsection (f) of this section, the mediation shall be concluded within forty-five days of the date of the written demand. The mediation shall otherwise be conducted pursuant to rule 25 of the trial court rules, unless portions of the rule are clearly not applicable to a mediation conducted prior to the filing of a complaint or unless the supreme court of appeals promulgates rules governing mediation prior to the filing of a complaint. If mediation is conducted, the claimant may depose the health care provider before mediation or take the testimony of the health care provider during the mediation.

(h) The failure of a health care provider to timely respond to a notice of claim, in the absence of good cause shown, constitutes a waiver of the right to request pre-litigation mediation. Except as otherwise provided in this subsection, any statute of limitations applicable to a cause of action against a health care provider upon whom notice was served for alleged medical professional liability shall be tolled from the date of the mailing of a notice of claim to thirty days following receipt of a response to the notice of claim, thirty days from the date a response to the notice of claim would be due, or thirty days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever last occurs. If a claimant has sent a notice of claim relating to any injury or death to more than one health care provider, any one of whom has demanded mediation, then the statute of limitations shall be tolled with respect to, and only with respect to, those health care providers to whom the claimant sent a notice of claim to thirty days from the receipt of the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded.[1]

This Court explained in *Miller*,

A proper reading of W.Va.Code § 55–7B–6(b), indicates that 30 days before a plaintiff files a medical malpractice action, he or she must serve a notice of claim on the defendant. This notice of claim is to include two things—(1) a statement of the theory or theories of liability upon which a cause of action may be based; and (2) a screening certificate of merit. However, under subsection (d), if a claimant has insufficient time to obtain a screening certificate of merit prior to the expiration of the statute of limitations, the claimant shall file a statement of the theory or theories of liability along with a statement of intent to provide a screening certificate of merit within 60 days of the date the health care provider receives notice of claim.

---

1. The provisions of W.Va.Code § 55–7B–6, as amended in 2003, are substantially the same as those in the 2001 version with the exception of several relatively minor changes.

Pursuant to subsection (e), once a claimant files his or her certificate of merit under subsection (d), a health care provider, upon receipt of the certificate, must respond to the claimant, in writing, within 30 days. According to subsection (f), the health care provider is entitled to pre-litigation mediation before a qualified mediator upon written demand to the claimant. Subsection (g) indicates that if the health care provider demands mediation, the mediation shall be conducted within 45 days of the date of the written demand.

Significantly, subsection (h) indicates that the statute of limitations applicable to the medical malpractice action shall be tolled from the date of the mailing of a notice of claim to 30 days following receipt of a response to the notice of claim, 30 days from the date a response to the notice of claim would be due, or 30 days from the receipt by the claimant of written notice from the mediator that the mediation has not resulted in a settlement of the alleged claim and that mediation is concluded, whichever occurs last.

*Miller,* slip op. at 489–90.

Upon application of the clear provisions of W.Va.Code § 55–7B–6 (2001), to the facts of the instant case, it is obvious that the circuit court properly dismissed Appellant's complaint.[1] The facts show that Appellant provided Appellees with a screening certificate of merit on June 2, 2003. Appellant thereaf-

ter filed suit on June 27, 2003, less than the 30 days mandated by W.Va.Code § 55–7B–6(f). Thus, Appellees were not provided their 30–day time period in which to demand pre-litigation mediation prior to the filing of Appellant's complaint. Pursuant to W.Va. Code § 55–7B–6(a) (2001), "no person may file a medical professional liability action against any health care provider without complying with the provisions of this section."

Finally, I note that the result of the dismissal of Appellant's complaint would most likely have been the re-filing of the complaint under the 2003 amendments to the Medical Professional Liability Act, which became applicable on July 1, 2003. Contrary to the assertions in the majority opinion, there would have been no injustice to Appellant. Rather, his causes of action simply would have been governed by an amended version of the Medical Professional Liability Act.

Accordingly, for the reasons set forth above, I dissent.

---

1. I agree with the circuit court that "notwithstanding the fact that other theories of recovery are alluded to in the [Appellant's] pleadings, since the giving or failure to give appropriate types and levels of medical care to the plaintiff's decedent is the common gravamen of all theories of relief advanced by the [Appellant]" the entire action falls within the scope of the Medical Professional Liability Act.