# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## SEPTEMBER 2021 TERM

**FILED**

**November 22, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 21-0230

_____

### STATE OF WEST VIRGINIA, EX REL. WEST VIRGINIA UNIVERSITY HOSPITALS, INC.,
Petitioner,

## V.

### THE HONORABLE CINDY S. SCOTT, JUDGE OF THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA, AND A.F., A MINOR, BY AND THROUGH HER NEXT FRIENDS, SARAH F. AND DANIEL F., INDIVIDUALLY
Respondents.

_____

## PETITION FOR WRIT OF PROHIBITION

## WRIT GRANTED AS MOULDED
_____

Submitted: October 6, 2021
Filed: November 22, 2021

Christine S. Vaglienti
Assistant VP/Senior Litigation Counsel
West Virginia United Health
System, Inc.
Morgantown, West Virginia
Attorney for Petitioner

Michael G. Simon
Kevin M. Pearl
Frankovitch, Anetakis, Simon, Decapio
& Pearl, LLC
Weirton, West Virginia
Alan H. Perer
Swensen & Perer
Pittsburgh, Pennsylvania
Attorneys for Respondents,
A.F., Sarah F., and Daniel F.

**Thomas J. Hurney, Jr.**
**Blair E. Wessels**
**Jackson Kelly PLLC**
**Charleston, West Virginia**
**Attorneys for Amici Curiae,**
**The West Virginia Hospital Association,**
**The West Virginia Mutual Insurance**
**Company, a Magmutual Company, and**
**The West Virginia State Medical**
**Association**

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE WOOTON concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1997).

3.    "The pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional and failure to provide such notice deprives a circuit court of subject matter jurisdiction."  Syllabus point 2, *State ex rel. PrimeCare Medical of West Virginia, Inc.  v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019).

4.    "Ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable."  Syllabus point 2, *State ex rel. Arrow Concrete Co. v. Hill*, 194 W. Va. 239, 460 S.E.2d 54 (1995).

5.    "The failure to plead a claim as governed by the Medical Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*, does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled."  Syllabus point 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007).

6.    "Under W. Va. Code, 58-5-1 (1925), appeals only may be taken from final decisions of a circuit court.  A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce

by execution what has been determined." Syllabus point 3, *James M.B. v. Carolyn M.,* 193 W. Va. 289, 456 S.E.2d 16 (1995).

**Jenkins, Chief Justice:**

This case was brought as a writ of prohibition under the original jurisdiction of this Court by Petitioner West Virginia University Hospitals, Inc. ("WVUH"). The Respondents, A.F. and Sarah F. and Daniel F., individually and as next friends of A.F., ("Respondents"), filed their original complaint in April of 2020, in which they put forth multiple causes of action including medical negligence, loss of services and parental loss of consortium, and corporate negligence stemming from the hands-on nursing care and treatment of their child, A.F. In response, WVUH filed a combined answer and petition for declaratory judgment (hereinafter "petition for declaratory judgment") in which it asked the Circuit Court of Monongalia County to declare that the West Virginia Medical Professional Liability Act, West Virginia Code sections 55-7B-1 to -12 ("MPLA"), applies to the corporate negligence allegations asserted by Respondents in the original complaint.

Before the circuit court ruled on the petition for declaratory judgment, Respondents filed an amended complaint in which several new corporate negligence claims against WVUH were added; however, Respondents did not fulfill the pre-suit notice requirements of the MPLA. In response, WVUH filed a motion to dismiss and strike the amended complaint (hereinafter "motion to dismiss") with regard to the newly added claims. After a hearing was held on the petition for declaratory judgment and the motion to dismiss, the circuit court denied both.

1

Before this Court, WVUH challenges the circuit court's rulings and contends that the circuit court committed clear legal error by: (1) denying the motion to dismiss because the Respondents failed to comply with the pre-suit notice requirements of the MPLA, and, therefore, the circuit court was deprived of subject matter jurisdiction; (2) denying the motion to dismiss because the complaint otherwise fails to state claims upon which relief can be granted; and (3) withholding declaratory judgment regarding the MPLA's applicability to the corporate negligence claims.

Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we conclude that the circuit court was devoid of subject matter jurisdiction over the claims of corporate negligence added in the amended complaint due to Respondents' failure to comply with the pre-suit notice requirements of the MPLA for these claims. Moreover, we conclude that litigation of the claims of corporate negligence that were first asserted in the original complaint, for which the pre-suit notice requirements were satisfied, are governed by the MPLA. Accordingly, we grant the requested writ of prohibition as moulded.[1]

---

[1] We wish to acknowledge the appearance of Amici Curiae the West Virginia Hospital Association, the West Virginia Mutual Insurance Company, and the West Virginia State Medical Association, and to express our appreciation for their brief in support of the position espoused by West Virginia University Hospitals, Inc., herein. We have considered their arguments and brief in our decision of this case.

# I.

## FACTUAL AND PROCEDURAL HISTORY

In October of 2017, Respondent Sarah F. presented to Ruby Memorial Hospital in Morgantown, West Virginia, to give birth to twins. Eleven hours after the birth, it is alleged that one of the twins, A.F., was introduced to air bubbles through intravenous equipment. The air bubbles went into A.F.'s blood stream and were delivered to her liver, heart, and brain. It is asserted by the Respondents that this unfortunate event was caused when a WVUH-employed nurse failed to properly prime the intravenous tubing, pump, and/or equipment and therefore negligently allowed for the introduction of air bubbles into A.F.'s intravenous tubing. Now, according to Respondents, A.F. is neurologically impaired and requires twenty-four-hour care.

In November of 2019, Respondents served WVUH with a pre-suit notice of claim and screening certificate of merit in accordance with the pre-suit notice requirements of the MPLA. WVUH demanded pre-suit mediation, which ultimately was unsuccessful. As such, the original complaint was filed in Monongalia County on April 6, 2020. In response, WVUH filed an answer and petition for declaratory judgment. In its petition, WVUH asked the circuit court to declare that the MPLA is applicable to the allegations asserted by Respondents in Count II (corporate negligence) of the original complaint.

Before the circuit court could rule on the petition for declaratory judgment, Respondents filed an amended complaint adding several new corporate negligence

3

claims—failure to purchase and utilize, failure to document, spoliation of evidence, and failure to report—against WVUH. However, Respondents did not file any new notice of claim or certificate of merit as required by the MPLA. *See* W. Va. Code § 55-7B-6 (eff. 2019). In response, WVUH filed a motion to dismiss with specific regard to the new claims added to Count II (corporate negligence). A few months later, a hearing was held on the petition for declaratory judgment and the motion to dismiss. From the bench, and without explanation, the circuit court denied both. After being asked by WVUH for findings of fact and conclusions of law, the court issued a new order. It is from this order that WVUH seeks relief.

## II.

### STANDARD FOR ISSUANCE OF WRIT

This Court has explained the standard of review applicable to a writ of prohibition, stating in Syllabus point 2 of *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977), that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1." Further, this Court will grant writs of prohibition

> to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

4

Syl. pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014).

> When considering a writ of prohibition, this Court is guided by the following:
>
> > In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1997). "In determining the third factor, the existence of clear error as a matter of law, we will employ a *de novo* standard of review, as in matters in which purely legal issues are at issue." *State ex rel. Gessler v. Mazzone*, 212 W.Va. 368, 372, 572 S.E.2d 891, 895 (2002). With these standards in mind, we now examine WVUH's request for a writ of prohibition.

5

# III.

## DISCUSSION

In the case sub judice, WVUH has alleged that the circuit court committed numerous errors. Accordingly, we will review each alleged error in turn.

### A.  Motion to Dismiss the Additional Corporate Negligence Claims in Respondents' Amended Complaint

WVUH's primary contention is that the Circuit Court of Monongalia County exceeded its legitimate powers and committed clear legal error in denying its motion to dismiss the amended complaint. WVUH argues that the motion to dismiss should have been granted because Respondents failed to comply with the pre-suit notice requirements of the MPLA, thereby depriving the circuit court of subject matter jurisdiction. In particular, WVUH argues that the new claims set forth in Respondents' amended complaint—failure to purchase and utilize, failure to document, failure to report, and spoliation of evidence—are inherently governed by the MPLA because the allegedly negligent acts and omissions occurred within the context of WVUH rendering health care services. As such, the circuit court was deprived of subject matter jurisdiction when Respondents filed an amended complaint without providing a notice of claim and screening certificate of merit in accordance with West Virginia Code section 55-7B-6.

Respondents disagree with the position advocated by WVUH and emphasize that the alleged corporate decisions and conduct at issue in the amended complaint do not

6

constitute health care services, but rather, are corporate-level decisions unrelated to the patient's plan of care. Respondents rely on this Court's decision in *Manor Care, Inc. v. Douglas*, 234 W. Va. 57, 763 S.E.2d 73 (2014), to support their argument that whether a claim is subject to the MPLA is a fact-intensive query, and that, here, WVUH glosses over the alleged facts and summarily asserts that the MPLA applies when health care services are an integral part of the lawsuit, regardless of how the causes of action are characterized. Specifically, Respondents contend that because the additional causes of action pertain to non-medical conduct made at the corporate level, they are not subsumed by the MPLA or its pre-suit notice requirements. Therefore, Respondents maintain that the circuit court had subject matter jurisdiction and was correct in denying the motion to dismiss.

The MPLA specifically provides that "no person may file a medical professional liability action against any health care provider without complying with the provisions of [W. Va. Code § 55-7B-6]." W. Va. Code § 55-7B-6(a). Further, West Virginia Code section 55-7B-6(b) requires:

> At least 30 days prior to the filing of a medical professional liability action against a health care provider, *the claimant shall serve* by certified mail, return receipt requested, *a notice of claim* on each health care provider the claimant will join in litigation. For the purposes of this section, where the medical professional liability claim against a health care facility is premised upon the act or failure to act of agents, servants, employees, or officers of the health care facility, such agents, servants, employees, or officers shall be identified by area of professional practice or role in the health care at issue. *The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities*

7

> *to whom notices of claim are being sent, together with a screening certificate of merit.*

(Emphasis added).

This Court has held that "[t]he pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional and that failure to provide such notice deprives a circuit court of subject matter jurisdiction." Syl. pt. 2, *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019). When jurisdictional challenges are raised, we "must determine . . . whether it is jurisdictional in the sense of requiring a decision upon facts or a decision upon a pure question of law." *Lewis v. Fisher*, 114 W. Va. 151, 154-55, 171 S.E. 106-07 (1933). "If it rests upon a determination of fact, prohibition will not lie. If it rests upon the determination of a question of law, prohibition will lie if the trial court has exceeded its jurisdiction or usurped a jurisdiction that in law does not exist." *Id*. at 155, 171 S.E. at 107.

As noted above, the MPLA instructs that, "no person may file a medical professional liability action against any health care provided without" submitting the required pre-suit notice. *See* W. Va. Code § 55-7B-6(a). WVUH asserts that all of the Respondents' causes of action in the amended complaint amount to "health care." The Respondents deny this, contending in their brief that the additional causes of action added in the amended complaint are "corporate-level decisions" and "do not constitute health-care services rendered by a medical provider."

8

According to the 2017 version of the MPLA promulgated by the Legislature, West Virginia Code section 55-7B-2(e) (eff. 2017) defines "health care" as

> (1) Any act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment;
>
> (2) Any act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to or on behalf of a patient during the patient's medical care, treatment or confinement, including, but not limited to, staffing, medical transport, custodial care or basic care, infection control, poisoning, hydration, nutrition and similar patient services; and
>
> (3) The process employed by health care providers and health care facilities for the appointment, employment contracting, credentialing, privileging and supervision of health care providers.

The aforementioned definition was amended to its current form in 2015, following this Court's decision in *Manor Care, Inc. v. Douglas*, 234 W. Va. 57, 763 S.E.2d 73 (2014). The Legislature amended the MPLA by broadening several statutory definitions, including "health care." Essentially, in *Manor Care*, the plaintiff alleged that certain decisions made at the long-term care facility, such as failure to allocate a proper budget to allow the long-term care facility to function properly and maintain adequate staff, were not based on health care services rendered, or which should have been rendered, and, therefore, constituted "ordinary" or "corporate" negligence rather than "medical negligence." *Id.* at 74, 763 S.E.2d at 90. The circuit court instructed the jury to

allocate its negligence award between "ordinary" or "corporate" negligence and "medical negligence." *Id.* On appeal, this Court upheld the circuit court's allowance and affirmed the application of the MPLA to only the claims resulting from the death or injury of a person for any tort or breach of contract based on "health care" services rendered, or which should have been rendered. *Id.* at 75, 763 S.E.2d at 91. This Court found that the MPLA did not apply to other claims that may have been contemporaneous to or related to the alleged act of medical professional liability. *Id.* [omitted sentences]

As stated above, Respondents rely on this Court's decision in *Manor Care* to support their contention that the new causes of action in the amended complaint fall outside of the definition of "health care," and therefore are not subject to the pre-suit notice requirements of the MPLA. We disagree. While Respondents offer conclusory assertions that the new causes of action at issue are corporate decisions, Respondents fail to address the major changes made to the MPLA since the opinion in *Manor Care* was filed in 2014.[2]

---

[2] In finding that the MPLA did not provide the exclusive remedy for the petitioner's negligence claims in *Manor Care, Inc. v. Douglas*, 234 W. Va. 57, 763 S.E.2d 73 (2014), the Court concluded that "[c]laims related to business decisions, such as proper budgeting and staffing . . . do not fall within that [MPLA] statutory scheme." *Id.* at 75, 763 S.E.2d at 91. Further, in our discussion of whether the MPLA was applicable to petitioner's claims, the Court relied heavily on Syllabus point 3 of *Boggs v. Camden-Clark Memorial Hospital Corp.*, 216 W. Va. 656, 609 S.E.2d 917 (2004), *holding modified by Gray v. Mena*, 218 W. Va. 564, 625 S.E.2d 326 (2005). In Syllabus point 3 of *Boggs*, we held:

> The West Virginia Medical Professional Liability Act, codified at W. Va. Code § 55-7B-1 *et seq.*, applies only to claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a

10

Rather, Respondents attempt to draw comparisons between the conduct at issue in the case sub judice and the conduct at issue in *Manor Care*, without any consideration of the legislative changes that have taken place in the seven years since *Manor Care*.

Resolution of this matter thus requires us to analyze the current and prior versions of the MPLA. Therefore, our decision of this case is guided by the rules of statutory construction. When examining a statute to determine its meaning, this Court has held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Further, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

_____

health care provider or health care facility to a patient. It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability.

As we noted in *State ex rel. PrimeCare Medical of West Virginia, Inc. v. Faircloth*, 242 W. Va. 335, 342 n. 18, 835 S.E.2d 579, 586 n. 18 (2019), "[t]his holding was based on a prior version of the statute and is no longer correct." Likewise, because this Court's decision in *Manor Care* was also based on a prior version of the MPLA, we find that parts of the *Manor Care* analysis pertaining to the MPLA have been superseded by statute and are no longer correct statements of the law regarding the scope and application of the MPLA.

Prior to the 2015 amendments, the MPLA defined "health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement." W. Va. Code § 55-7B-2(e) (eff. 2006). This was the definition in effect when this Court issued the *Manor Care* decision in 2014. However, in 2015, the Legislature expanded the definition of "health care" to include "[a]ny act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment." W. Va. Code § 55-7B-2(e)(1) (eff. 2015). The 2015 amendments also expanded the definition of "medical professional liability." The prior definition of "medical professional liability" was "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i) (eff. 2006). The 2015 amendment added the following sentence to the definition of "medical professional liability": "It also means other claims that may be *contemporaneous to or related to* the alleged tort or breach of contract or otherwise provided, *all in the context of rendering health care services*." W. Va. Code § 55-7B-2(i) (eff. 2015) (emphasis added). This addition to "medical professional liability" combined with the broadened definition of "health care," expanded what services, and therefore what claims, are included in the definition of "medical professional liability." All of these changes illustrate the Legislature's intent for the MPLA to broadly apply to services encompassing patient care—not just the care itself.

12

Here, Respondents' amended complaint alleged multiple corporate negligence causes of action on the part of WVUH stemming from a "corporate-level decision to forgo installation of industry-recommended air filters on *all* of its pediatric PIV systems." (Emphasis in original). In making this argument under a corporate negligence classification, and not a claim under the MPLA, Respondents maintain that the additional causes of action arise from a purchasing decision by a corporate employee or entity and *not* a decision involving medical judgment or skill. Once again, we disagree. Upon an appropriate reading of the MPLA, it is clear that the plain language of the MPLA applies to the corporate negligence claims.

At first glance it may appear that Respondents' causes of actions are not grounded in medical negligence; however, one would be remiss to ignore the legislative pathway of the MPLA. As stated above, "medical professional liability" no longer encompasses only *health care services rendered or that should have been rendered.* It also includes "other claims *that may be contemporaneous to or related to* the alleged tort or breach of contract or otherwise provided, *all in the context of rendering health care services.*" W. Va. Code § 55-7B-2(i) (emphasis added).

Finding that the MPLA *does not* apply to Respondents' corporate negligence claims would be contrary to the Legislature's intent in enacting—and amending—the MPLA, and it would also be contrary to this Court's prior holdings. *See, e.g.*, Syl. pt. 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007) ("The failure to plead

13

a claim as governed by the Medical Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*, does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled."). *Accord Minnich v. MedExpress Urgent Care*, 238 W. Va. 533, 796 S.E.2d 642 (2017); *Gray v. Mena*, 218 W. Va. 564, 625 S.E.2d 326 (2005).

It goes without saying that Respondents cannot avoid the MPLA with creative pleading. The corporate negligence claims in Respondents' original complaint squarely fall within the MPLA's definitions because they relate to acts performed by health care providers, or persons supervised by health care providers or licensed professionals, regarding staffing. *See* W. Va. Code § 55-7B-2(e)(2). Then, in the amended complaint, Count II (corporate negligence) was amended to add the following claims:

> h. The Defendant failed to purchase and utilize air filters for its pediatric PIV (peripheral intravenous systems), which would have prevented the air embolism that resulted in the catastrophic injuries to [minor child] on October 12, 2017. Said air filters have been recommended and widely used for years prior to October 12, 2017. Defendant made a corporate purchasing decision not to purchase and equip all pediatric PIV systems in the NICU with these potentially lifesaving devices. Defendant's failure to purchase and utilize said filters negligently exposed all minor patients in the NICU, including the minor Plaintiff herein, to unnecessary and preventable risks;
>
> i. Defendant's medical record, including the minor Plaintiff's discharge summary, misrepresented the diagnosis and

cause of the minor Plaintiff's cardiac arrest and subsequent injuries by failing to identify the iatrogenic air embolism as the cause of the minor Plaintiff's cardiac arrest and subsequent injuries. The corporate policy of not requiring a discharge summary to include the iatrogenic air embolism in the patient's diagnosis is negligent. Failure to include the iatrogenic "never event" in a discharge summary likely impacts the regulatory status of the hospital; possible financials and fundraising, including reimbursement of hospital charges; liability costs; and the quality of patient care, including patients such as minor Plaintiff herein;

j. Defendant hospital committed spoliation of the peripheral line tubing that was used at the time of the infusion which resulted in the air embolism. Pursuant to the Defendant's Medical Device Incident Reporting Program, the device in use at the time of the injury is to be labeled and maintained by the Biomedical Engineering Department. The Defendant failed to properly train its providers of the policy or enforce the policy. Moreover, all devices involved in the Sentinel Event need to be maintained for inspection and testing. As a result of the spoliation of the tubing, the integrity of the tubing, and other pertinent information relative to the cause of the air embolism is not accessible to the Plaintiffs;

k. It is believed and therefore averred that the Defendant hospital failed to report any Sentinel Event to regulatory bodies, including the Joint Commission and/or the West Virginia Department of Health and Human Resources. The lack of reporting to regulatory agencies reduces the likelihood of regulatory investigations, remedial requirements, and has a direct effect on the quality of care, including the quality of care provided to the minor Plaintiff.

Respondents' Amended Compl., at ¶¶ h-k. Respondents contend that the additional allegations in their amended complaint "state[] claims against [WVUH] for its own corporate conduct and decisions, separate from the individualized health care provided to [the minor child]." However, upon our inquiry in the case sub judice, we simply cannot

15

accept Respondents' attempt to frame the aforementioned allegations as being unrelated to the provision of health care services.

As stated above, understanding the amendments to the MPLA and the changing landscape of medical malpractice cases is significant to the resolution of this case. Now, when a complaint contains a cause of action that meets the definition of "health care" under West Virginia Code section 55-7B-2(e), claims that are either "*related to*" or "*contemporaneous to*" the medical injury being asserted, "*all in the context of rendering health care services*," meet the definition, and are encompassed in "medical professional liability" as it is defined in West Virginia Code section 55-7B-2(i). The "health care" claim is the "anchor;" it gets you in the door of MPLA application to allow for inclusion of claims that are "contemporaneous to or related to" that claim, but still must be in the overall context of rendering health care services. It is not a broad stroke application that because a claim is contemporaneous to or related to health care that it falls under the MPLA. To put a finer point on it, you must have the anchor claim (fitting the definition of "health care") and then make the showing that the ancillary claims are (1) contemporaneous with or related to that anchor claim; and (2) despite being ancillary, are still in the context of rendering health care.

In the instant case, we find that each of Respondents' new claims, as pled in their amended complaint, is either an anchor claim or an ancillary claim that falls within the context of rendering health care. Upon review of the amended complaint, it is clear

16

that the Respondents accuse WVUH of negligence arising from the medical care and treatment of the minor child. In particular, Respondents blame WVUH—an undisputed health care provider—for causing injury to their child by (1) failing to purchase and utilize air filters, (2) failing to document certain diagnoses in the patient's medical record, (3) committing spoliation of the line tubing, and (4) failing to report an alleged Sentinel Event. Here, although characterized as corporate negligence, Respondents' entire amended complaint arises from and is factually related to the medical care and treatment provided to the minor child by WVUH—the anchor health care claim. But, as noted, simply because an ancillary claim can be related to the underlying claim does not mean that it necessarily arises "in the context of rendering health care." Examining each of these claims in turn, we conclude that they are either "health care" or "in the context of rendering health care" insofar as they are *pled* that way.

We recognize that to be governed by the MPLA, contemporaneous or related claims must still be grounded "in the context of rendering health care services." Because the additional corporate negligence claims set forth in the amended complaint are based on the health care provided to the minor child—the core basis of the amended complaint—we conclude that the MPLA applies to those additional corporate claims.

1. **Failure to Purchase and Utilize.** Respondents' first new allegation is that WVUH failed to purchase and utilize air filters for its pediatric PIV systems, which would have allegedly prevented the air embolism that resulted in injuries to the minor child.

17

While failure to equip the PIV machines with air filters might have been a corporate decision, it is nonetheless one made in contemplation that the machine either needed one or did not to properly function in rendering care to patients. We conclude, therefore, that the decision to purchase medical equipment and whether that decision had an ultimate effect on the care and treatment of a patient is a claim that inherently arises in "the context of rendering health care." This claim falls well within "the context of rendering health care" because its adjudication requires expert testimony that the failure to use an air filter was required by the standard of care, below the standard of care, and caused the injury.

      **2.**    **Failure to Document.** The second additional corporate negligence allegation is that WVUH failed to properly document the minor child's cause of injuries in the discharge summary. While documentation may not appear to be "health care" in a traditional sense of the word, it does implicate the provision of "health care" under the amended MPLA. It is not an ancillary claim, but an anchor "health care" claim in and of itself. Deciding what to document—or what not to document—in a patient's medical record is a decision solely in the purview of physician, nurse, or other medical professional providing care to a patient. The medical record is then used in addressing further needs of the patient, and in developing a treatment plan. As pled, this claim implicates the definition of health care because it takes issue with the way the physician "misrepresented" the diagnosis or should have made additional conclusions (i.e., the cause). Like the purchase of air filters, this claim implicates a medical professional inquiry insofar as those allegations assume the cause of the cardiac arrest and subsequent injuries, and the same

18

must be proven to prevail on this claim. That does not change simply because a "corporate policy" is invoked. As such, we find that the decision and discretion involved in preparing a discharge summary is squarely a "health care" claim.

**3.      Spoliation of Evidence and Failure to Report.** The next allegations are that (1) WVUH committed spoliation of the peripheral line tubing that was used at the time of the infusion; and (2) WVUH failed to report a Sentinel Event. We conclude they are ancillary claims that, as pled, are in the context of rendering health care. Respondent averred to the circuit court in seeking leave to amend its complaint that all of the claims added in the amended complaint fall under the umbrella of the "corporate negligence" Count II in the original complaint.

The failure to report to the Joint Commission and the West Virginia Department of Health and Human Resources implicates a purported duty owed to a third-party to report sentinel events to allow for appropriate oversight and investigation into the provision of health care to facilitate quality health care, and the allegation that WVUH failed in executing that duty to a third-party. Specifically, the amended complaint states:

> [i]t is believed and therefore averred that the Defendant hospital failed to report any Sentinel Event to regulatory bodies, including the Joint Commission and/or the West Virginia Department of Health and Human Resources. The lack of reporting to regulatory agencies reduces the likelihood of regulatory investigations, remedial requirements, and has a direct effect on the quality of care, including the quality of care provided to the minor Plaintiff.

19

Classifying events as Sentinel Events and reporting to those agencies is "in the context of rendering health care." The same is true as to the spoliation claim. As to the spoliation claim, the amended complaint states:

> Defendant hospital committed spoliation of the peripheral line tubing that was used at the time of the infusion which resulted in the air embolism. Pursuant to the Defendant's Medical Device Incident Reporting Program, the device in use at the time of the injury is to be labeled and maintained by the Biomedical Engineering Department. The Defendant failed to properly train its providers of the policy or enforce the policy. Moreover, all devices involved in the Sentinel Event need to be maintained for inspection and testing. As a result of the spoliation of the tubing, the integrity of the tubing, and other pertinent information relative to the cause of the air embolism is not accessible to the Plaintiffs.

The MPLA protects health care providers when they are acting as such.[3] The allegations as set forth in the complaint do not accuse the health care providers of stepping outside the shoes of "health care providers" and into the shoes of conspirators such that these customary acts of reporting to the Joint Commission/WVDHHR and disposing of used medical equipment are outside "the context of rendering health care" even if they were done negligently.

---

[3] *Boggs v. Camden-Clark Mem. Hosp. Corp.*, 216 W. Va. 656, 663, 609 S.E.2d 917, 924 (2004). Of course, *Boggs* has been legislatively overruled post-2015 amendments and the MPLA now all-but-expressly incorporates negligent hiring claims which were referenced in *Boggs* as distinctly *not* healthcare. Nevertheless, the legislative intent remains.

While the resolution of the motion to dismiss these claims is not properly before the Court, whether these claims fall under the purview of the MPLA *is* properly before us, and analyzing whether a negligent spoliation claim falls under the purview of the MPLA is a pointless academic exercise when the cause of action *does not exist in this State*.[4] This State does, however, recognize the tort of *intentional* spoliation and Respondents' claim does not even begin to set forth the elements required in proving that claim.[5]

---

[4] Syl. pt. 2, *Hannah v. Heeter*, 213 W. Va. 704, 584 S.E.2d 560 (2003) ("West Virginia does not recognize spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action."). *But see id.* at Syl. pt. 5 (recognizing negligent spoliation claim as a cause of action against third-party).

[5] *Id.* at Syl. pts. 9, 10, and 11:

> 9. West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party.

> 10. Intentional spoliation of evidence is defined as the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action.

> 11. The tort of intentional spoliation of evidence consists of the following elements: (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages. Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation.

21

Furthermore, the Respondents rely on *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 216 W. Va. 656, 662, 609 S.E.2d 917, 923 (2004), *superseded by statute as stated in State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019), to support their contention that spoliation of evidence does not constitute "medical professional liability" or "health care" under the MPLA. However, this reliance is flawed. In *Boggs*, this Court held that the MPLA (2003 version) did not apply to the patient's spoliation of evidence claim, among others, as those claims "were only contemporaneous or related to the alleged act of medical professional liability." *Id.* at 663, 609 S.E.2d at 924. The *Boggs* Court held in Syllabus point 3, that,

> The West Virginia Medical Professional Liability Act, codified at W. Va. Code § 55-7B-1 *et seq.,* applies only to claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability.

However, the *Boggs* case was decided ten years before the MPLA's amendments in 2015. In those amendments, the language was explicitly changed to *allow for* "claims that may be contemporaneous to or related to the alleged tort . . . all in the context of rendering health care services." Thus, we find the reliance on *Boggs* to be misplaced. Therefore, for these

---

The spoliator must overcome the rebuttable presumption or else be liable for damages.

reasons, and all of the reasons put forth above, we conclude that the spoliation claim is an

ancillary claim that, as pled, is within "the context of rendering health care."[6]

Thus, because we conclude that the MPLA clearly applies to the additional

causes of action in Respondents' amended complaint, we must also conclude that the

circuit court was deprived of subject matter jurisdiction. Here, there is no dispute that

Respondents did not serve a notice of claim or a screening certificate of merit consistent

with West Virginia Code section 55-7B-6 prior to filing their amended complaint. Thus,

in light of these findings, we conclude that Respondents were required to comply with the

pre-suit notice requirements of the MPLA, and because they failed to do so, the circuit

court is devoid of subject matter jurisdiction to consider the claims alleged in the

Respondents' amended complaint.[7]

---

[6] Our analysis discusses the distinction between intentional spoliation and the spoliation claim as pled in the instant case. The ultimate resolution of this issue is based strictly on the factual scenario, as set forth above, and the manner in which the allegations were pled in this matter.

[7] In the alternative, WVUH also argues that, aside from the failure to fulfill the pre-suit requirements of the MPLA, Respondents' amended complaint should also have been dismissed for the independent reason that it failed to state claims upon which relief could be granted. WVUH alleges that the new causes of action—failure to purchase and utilize, failure to document, spoliation of evidence, and failure to report—were merely added to the amended complaint without sufficient allegations to sustain their corresponding essential elements.

Because our ultimate resolution of the motion to dismiss issue concludes that the circuit court did not have subject matter jurisdiction over the new claims due to the Respondents' failure to comply with the pre-suit notice requirements of the MPLA, we need not further consider this matter.

23

## B. *Declaratory Judgment*

Lastly, WVUH contends that the circuit court exceeded its legitimate powers and committed clear error when it denied WVUH's request for declaratory relief—namely, a determination that the MPLA applies to all of Respondents' causes of action in the original complaint.[8]  Prior to the filing of the amended complaint, WVUH petitioned the circuit court to declare that the MPLA applies to the allegations asserted by Respondents in Count II (corporate negligence) of the original complaint, despite Respondents' attempt to characterize the claims as corporate negligence.  In the original complaint, Count II (corporate negligence) included the following causes of action: negligent hiring, negligent staffing, negligent failure to train, negligent failure to supervise, negligent failure to have proper protocols, failure to protect, and failure to correct.  Before the circuit court ruled on the petition for declaratory judgment, Respondents amended Count II (corporate negligence), and added additional causes of action: failure to purchase and utilize, failure to document, spoliation of evidence, and failure to report.  Unlike the original complaint, Respondents did not serve a notice of claim or screening certificate of merit before filing the amended complaint.

---

[8] For clarification, WVUH's petition for declaratory judgment sought a declaration from the circuit court that the corporate negligence claims in Respondents' original complaint were encompassed by the MPLA.  The petition for declaratory judgment was filed before Respondents' amended complaint; therefore, in discussing the circuit court's order denying the petition for declaratory judgment, it should be noted that any declaratory relief would only be applicable to the claims in the original complaint.

In denying the petition for declaratory judgment, the circuit court concluded that the request was premature and that certain issues required factual development. However, the circuit court also found "that a declaratory decree on this issue will be of practical assistance" and that WVUH "may renew this [p]etition after discovery is more fully developed." WVUH disagrees with the circuit court's reasoning and argues that the circuit court had an obligation to decide the MPLA's applicability as a threshold issue because the petition presented a pure issue of law and no factual development will change whether Respondents' claims are governed by the MPLA.

In response, Respondents contend that the circuit court properly denied the petition for declaratory judgment because factual development and discovery are needed to determine the applicability of the MPLA. Moreover, Respondents argue that WVUH improperly seeks an advisory opinion from this Court declaring that each of the above claims are subject to the MPLA.

A petition for declaratory judgment is a proper means for adjudicating the legal rights of parties subject to a lawsuit. West Virginia Code section 55-13-1 (eff. 1941) states:

> Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and

effect; and such declarations shall have the force and effect of a final judgment or decree.

Furthermore, "[a]ny person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." W. Va. Code § 55-13-2 (eff. 1941). As Justice Cleckley noted in his concurrence in *Cox v. Amick*,

> A circuit court should always ask whether granting the relief would serve a useful purpose, or put another way, whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest. The hardship prong turns on whether the challenged action creates a real or immediate dilemma for the parties.
>
> Thus, the factors discussed above must [*sic*] not be applied mechanically but, rather, with flexibility. In granting declaratory relief, a circuit court should be reasonably convinced that allowing the case to proceed, here and now, would serve a useful purpose and would be of great practical assistance to all concerned. Not only should the utility of the decree be obvious, but the utility should have special force in the challenged and underlying action.

195 W. Va. 608, 619, 466 S.E.2d 459, 470 (1995) (Cleckley, J., concurring) (footnote omitted).

The purpose of a declaratory judgment "is to avoid the expense and delay which might otherwise result, and in securing in advance *a determination of legal questions* which, if pursued, can be given the force and effect of a judgment or decree

26

without the long and tedious delay which might accompany other types of litigation." *Harrison v. Town of Eleanor*, 191 W. Va. 611, 615, 447 S.E.2d 546, 550 (1994) (quoting *Crank v. McLaughlin*, 125 W. Va. 126, 133, 23 S.E.2d 56, 60 (1942)). Using this as our guide, we proceed to determine whether the circuit court committed clear legal error in denying WVUH's petition for declaratory judgment.

Per our discussion above—regarding to the applicability of the MPLA to the corporate negligence claims in Respondents' amended complaint—we emphasized that litigants cannot characterize claims as corporate or general negligence in an attempt to circumvent the parameters of the MPLA. *See* Discussion, *supra*, at III.A. Rather, the determination of the MPLA's applicability is a threshold legal issue, and to defer the ruling—as the circuit court suggested in its order—would "amount to a judicial repeal of W. Va. Code § 55-7B-6." *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 345, 835 S.E.2d 579, 589 (2019).

Above, in concluding that the MPLA applies to the causes of action in Respondents' amended complaint, we referred repeatedly to the 2015 amendments to the MPLA. In particular, we noted the definition of "medical professional liability," and the fact that it no longer encompasses only *health care services rendered or that should have been rendered.* It also includes "other claims *that may be contemporaneous to or related to* the alleged tort or breach of contract or otherwise provided, all in the context of rendering

27

health care services." W. Va. Code § 55-7B-2(i) (emphasis added). We find that the same reasoning and analysis is helpful in the resolution of the issue sub judice.

After reviewing the Count II (corporate negligence) causes of action in the original complaint, we agree with WVUH. The corporate negligence claims in Respondents' original complaint include the following: negligent hiring, negligent staffing, negligent failure to train, negligent failure to supervise, negligent failure to have proper protocols, failure to protect, and failure to correct. A review of the MPLA's definition of "health care" illustrates that the definition encompasses these claims:

> (2) Any act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to or on behalf of a patient during the patient's medical care, treatment or confinement, including, but not limited to, *staffing*, medical transport, custodial care or basic care, infection control, positioning, hydration, nutrition and similar patient services; and

> (3) The *process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers*.

W. Va. Code § 55-7B-2(e) (emphasis added).

When denying declaratory judgment, it is clear that the circuit court ignored the plain language of the statute. A reading of West Virginia Code section 55-7B-2(e) illustrates that Respondents' corporate negligence causes of action in their original

28

complaint fall within the purview of the MPLA as they relate to "staffing" and "[t]he *process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers*." Further, as to the allegations of infirm policies to prevent the event and to prevent harm, those allegations are fairly subsumed by both § 55-7B-2(e)(1) and (2) in the plan of care and allegations aimed at what should have been done or what procedures should have been implemented to prevent this event from occurring.

Therefore, due to the plain language of the statute and our detailed discussion of the MPLA's applicability set forth above, we conclude that the circuit court committed clear error in denying WVUH's petition for declaratory judgment.

## IV.

### CONCLUSION

For the reasons set forth above, we conclude that the Circuit Court of Monongalia County committed clear legal error (1) by failing to dismiss Respondents' claims against WVUH in the amended complaint because, to the extent the MPLA's pre-suit notice requirements were not complied with, the circuit court lacked subject matter jurisdiction; and (2) in denying WVUH's petition for declaratory judgment. Accordingly, we grant the writ of prohibition and vacate the circuit court's order denying WVUH's motion to dismiss and the order denying declaratory judgment. We further remand this

29

case to the circuit court and direct the circuit court to enter an order (1) dismissing Respondents' amended complaint as to the four additional corporate negligence claims asserted against WVUH; and (2) granting the petition for declaratory judgment.

Writ granted as moulded. [9]

---

[9] As this Court noted in *State ex rel. PrimeCare Medical of West Virginia, Inc. v. Faircloth*, 242 W. Va. 335, 345, 835 S.E.2d 579, 589 (2019): "Rule 12(h)(3) of the West Virginia Rules of Civil Procedure clearly states that a circuit court must dismiss an action '[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter[.]'"  The *Faircloth* Court further detailed that

> [w]hen such a dismissal occurs, "the medical malpractice action may be re-filed pursuant to W. Va. Code § 55-2-18 (2001) after compliance with the pre-suit notice of claim and screening certificate of merit provisions of W. Va. Code § 55-7B-6 (2003)."  Syl. Pt. 3, in part, *Davis [v. Mound View Health Care, Inc.]*, 220 W. Va. 28, 640 S.E.2d 91 [(2006)].  We note, however, that our savings statute only authorizes "a party [to] refile the action if the initial pleading was timely filed[.]"  W. Va. Code § 55-2-18(a) [2001].  This ability to re-file, when such re-filing is otherwise timely, is consistent with this Court's finding that "[t]he requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts."  Syl. Pt. 2, in part, *Hinchman [v. Gillette]*, 217 W. Va. 378, 618 S.E.2d 387 [(2005)].

*Faircloth* at 345 n. 24, 835 S.E.2d at 589 n. 24.

30