IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 22-0439

_____

**FILED**

**June 12, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. CHARLESTON AREA MEDICAL CENTER,
INC. D/B/A WOMEN AND CHILDREN'S HOSPITAL,
Petitioner,

V.

THE HONORABLE MIKI J. THOMPSON, JUDGE OF THE CIRCUIT COURT OF
MINGO COUNTY, WEST VIRGINIA; ANGELA LESTER; DENNY SETH LESTER;
MOUNTS FUNERAL HOME, INC.; AND NICOLE CLINE
Respondents.

_____

Petition for a Writ of Prohibition

WRIT GRANTED

_____

Submitted: January 11, 2023
Filed: June 12, 2023

Mark R. Simonton, Esq.
D.C. Offutt, Jr., Esq.
Alex S. Blevins, Esq.
Offutt Simmons Simonton, PLLC
Huntington, West Virginia
Attorneys for the Petitioner

Letitia Neese Chafin, Esq.
H. Truman Chafin, Esq.
Stacey Kohari, Esq.
The Chafin Law Firm, PLLC
Williamson, West Virginia
Attorneys for the Respondents Angela and
Denny Seth Lester

George A. Halkias, Esq.
Law Offices of Asad U. Khan
Charleston, West Virginia
Attorney for the Respondent Mounts
Funeral Home, Inc.

David F. Nelson, Esq.
Hendrickson & Long, PLLC
Charleston, West Virginia
Attorney for the Respondent Nicole Cline

JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE HUTCHISON and JUSTICE WOOTON dissent and may write separately.

**SYLLABUS BY THE COURT**

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1." Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2.      "The pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction." Syllabus point 2, *State ex rel. PrimeCare Medical of West Virginia, Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019).

3.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

4.      "The failure to plead a claim as governed by the Medical Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*, does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e) (2006)

i

(Supp. 2007), the Act applies regardless of how the claims have been pled." Syllabus point

4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007).

BUNN, Justice:

In this original jurisdiction case, Petitioner Charleston Area Medical Center, Inc. d/b/a Women and Children's Hospital ("CAMC") seeks a writ prohibiting the Circuit Court of Mingo County from enforcing its order denying CAMC's motion to dismiss the amended complaint filed by Respondents Angela and Denny Seth Lester ("the Lesters") for failure to follow the pre-suit notice requirements set forth in the West Virginia Medical Professional Liability Act, West Virginia Code §§ 55-7B-1, *et seq.* ("MPLA").

The Lesters sued Mounts Funeral Home ("Mounts"), its employee Nicole Cline, and CAMC asserting that each negligently mishandled fetal remains following Ms. Lester's treatment at CAMC for a stillbirth. The circuit court denied CAMC's motion to dismiss, finding that the Lesters were not required to comply with the MPLA's pre-suit requirements because a stillborn fetus could not be a "patient" as defined by the MPLA. On appeal, CAMC contends that the circuit court erred and the MPLA applies because Ms. Lester was a "patient" and handling the fetal remains was a service provided during her medical care. We agree and grant the writ of prohibition.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY[1]

The tragic events that led to this case began on May 17, 2018, when the Lesters presented to CAMC where Ms. Lester suffered a stillbirth, after the fetus she was carrying died of natural causes.[2] The stillbirth resulted in CAMC's possession of the fetal remains, which it placed in a morgue on the labor and delivery floor. The Lesters retained Mounts, a funeral home in Mingo County, West Virginia, to carry out the funeral arrangements and final disposition of the fetal remains. On May 21, 2018, Mr. Lester signed an authorization releasing the remains to Mounts. That same day, Mounts employee Nicole Cline, who had taken the day off work, traveled to Charleston, West Virginia, in her personal vehicle with her husband, Jeff Cline, to accompany him to a medical appointment.

---

[1] These facts are based upon the allegations contained in the underlying amended complaint and the verified discovery responses of Ms. Cline.

[2] We have explained that a

> "[f]etus" is, "[i]n humans, the product of conception from the end of the eighth week to the moment of birth." [*Stedman's Medical Dictionary for the Health Professions and Nursing*] 577 [(6th ed. 2008)]. *See also* [*Taber's Cyclopedic Med. Dictionary*] 914 [(22d ed. 2013)] (defining "fetus," in part, as "[t]he unborn human from the beginning of the ninth week, i.e., the third month, of gestation until birth").

*Saleh v. Damron*, 242 W. Va. 568, 569 n.3, 836 S.E.2d 716, 717 n.3 (2019) (some alterations in original). In 2022, the Legislature defined "fetus," in the Unborn Child Protection Act, as "the developing human in the postembryonic period from nine weeks

2

While in Charleston, Ms. Cline received a call from her employer requesting that she retrieve the Lesters' fetal remains from CAMC to bring back to the funeral home in Mingo County. Around 4:00 p.m., Ms. Cline arrived at CAMC with her husband to collect the fetal remains. A hospital employee escorted Ms. Cline to a small room where the CAMC employee placed a small package containing the fetal remains in a basket.[3] After Ms. Cline signed paperwork acknowledging her receipt of the remains, the CAMC employee accompanied Ms. Cline back to her vehicle with the remains. The CAMC employee placed the remains on the back seat of Ms. Cline's vehicle without the basket. Ms. Cline asked to keep the basket, but the CAMC employee refused, saying that it was hospital property. Fearful that the remains would shift around or be harmed during transport, Ms. Cline instructed her husband to hold the remains in his lap on the drive to the funeral home.

---

after fertilization until birth." H.B. 302, 2022 Leg. 3rd Extraordinary Sess. (W. Va. 2022) (codified at West Virginia Code § 16-2R-2).

Additionally, in the Unborn Child Protection Act, the Legislature defined an "intrauterine fetal demise" or "stillbirth" as "the unintended or spontaneous loss of a fetus after the 19th week of pregnancy." *Id.* The Act further defined "miscarriage" as "the unintended or spontaneous loss of an embryo or a fetus before the 20th week of pregnancy." *Id.* Here, both parties refer to the fetus being stillborn. For the purpose of this opinion, the distinction between stillbirth and miscarriage is not relevant.

[3] Ms. Cline indicated in her verified discovery responses that the CAMC employee wore scrubs and "appeared to be a female nurse."

Months later, on January 29, 2020, Mr. Cline posted a public video on multiple social media outlets describing the process of loading the fetal remains into the personal vehicle, as well as transporting and embalming the remains. The video wrongfully suggested that Ms. Lester voluntarily terminated her pregnancy. The Lesters viewed the video and became aware of how the fetal remains had been handled and transported.

In July 2021, the Lesters filed a complaint in the Circuit Court of Mingo County, naming Mounts and Ms. Cline as defendants. They filed an amended complaint in November 2021 adding CAMC as a defendant. The amended complaint alleged four separate counts of negligence against CAMC: (1) general negligence, (2) negligent infliction of emotional distress, (3) negligent mishandling of a corpse; and (4) negligent supervision. The Lesters claimed that CAMC negligently placed the fetal remains in the back of a personal vehicle filled with groceries and that they suffered "serious emotional distress due to the careless actions of [CAMC] in negligently delivering, transporting[,] and mishandling" the remains. Furthermore, the Lesters contended that CAMC negligently released the fetal remains to be placed in a personal vehicle "without proper equipment, and by allowing unauthorized persons to be involved with the transportation and handling of" the remains. Finally, the Lesters asserted that CAMC negligently supervised its employee who placed the fetal remains in the back seat of Ms. Cline's personal vehicle.

CAMC then filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) West Virginia Rules of Civil Procedure, arguing that it is a health

4

care provider under the MPLA and that the Lesters' claims were related to the rendering of health care services as defined in the MPLA.[4] CAMC contended that the MPLA applied to the Lesters' claims against it and that the Lesters failed to provide CAMC with the required pre-suit notice, which deprived the circuit court of subject matter jurisdiction to decide the claims against CAMC.

In response, the Lesters argued that the MPLA did not apply to their claims because the fetal remains were not a patient of CAMC, and consequently, the Lesters were not required to comply with the MPLA's pre-suit notice requirements. CAMC filed a reply, and the circuit court conducted a hearing on the motion. On March 29, 2022, the circuit court entered an order denying CAMC's motion to dismiss concluding that it had subject matter jurisdiction over the Lesters' claims against CAMC because the Lesters' claims did not trigger the pre-suit notice requirements of the MPLA. Specifically, the circuit court concluded that the MPLA did not apply because the fetal remains were, at all relevant times, deceased and not a patient of CAMC. The circuit court further found that the Lesters' amended complaint made allegations of privacy violations against CAMC,[5] and that those

---

[4] CAMC also asserted that the case should be dismissed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure for failure to state a claim. CAMC alleged that the amended complaint failed to set forth what duty or duties CAMC owed to the Lesters. The circuit court denied this portion of the motion as well, but this issue is not presently before the Court.

[5] The amended complaint enumerated several counts but did not set forth a separate count for an alleged privacy violation. Rather, the circuit court relied on the following language from the amended complaint to find a privacy violation claim:

allegations pertaining to the improper disclosure of medical information did not fall within the definition of "health care." Thus, the circuit court found that the MPLA was not applicable to the purported privacy claims.

CAMC filed this amended petition for a writ of prohibition on June 22, 2022, challenging the circuit court's March 29, 2022 order denying its motion to dismiss.[6]

## II.

## STANDARD FOR ISSUANCE OF WRIT

This Court has long held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code,

---

Defendant, CAMC d/b/a Women and Children's Hospital negligently mishandled the corpse of the Plaintiff's infant by releasing the body to be transported in a private vehicle, and by placing the body in the back seat of the private vehicle without proper equipment, and by allowing unauthorized persons to be involved with the transportation and handling of the Plaintiffs' infant's corpse in violation of West Virginia Code § 64-84-10.

[6] CAMC filed an original petition with this Court on June 7, 2022; however, the petition failed to name the real parties in interest as respondents in addition to the presiding judicial officer.

Mounts filed a response stating that neither the motion to dismiss the amended complaint nor the writ of prohibition directly concern it. Nevertheless, Mounts's position is that the MPLA does not apply to CAMC under the circumstances of this case. Ms. Cline did not file a response to the petition for writ of prohibition.

53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). We have made clear that "[t]he pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction." Syl. pt. 2, *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019).

When a petition raises a jurisdictional challenge, "we 'must determine . . . whether it is jurisdictional in the sense of requiring a decision upon facts or a decision upon a pure question of law.'" *State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 191, 866 S.E.2d 350, 357 (2021) (alteration in original) (citation omitted). "If it rests upon a determination of fact, prohibition will not lie." *Id.* (quotations and citation omitted). If, however, the challenge "rests upon the determination of a question of law, prohibition will lie if the trial court has exceeded its jurisdiction or usurped a jurisdiction that in law does not exist." *Id.* (quotations and citation omitted). Because this case presents a question of law, we apply a de novo standard of review in determining whether the circuit court exceeded its jurisdiction under the MPLA. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in mind, we now consider whether the MPLA deprives the circuit court of subject matter jurisdiction over the Lesters' claims against CAMC.

7

## III.

## DISCUSSION

As we have repeatedly cautioned, "the MPLA commands that, 'no person may file a *medical professional liability action* against any health care provider without' providing pre-suit notice. W. Va. Code § 55-7B-6(a) (emphasis added)." *Faircloth*, 242 W. Va. at 342, 835 S.E.2d at 586. CAMC alleges that all the claims against it are based in medical professional negligence; however, the Lesters disagree.[7]

---

[7] The Lesters contend that CAMC did not argue below that the MPLA applies because Ms. Lester received health care and the handling of the fetal remains was a part of that health care. However, we are not persuaded by this argument for several reasons. First, CAMC filed a motion to dismiss for lack of subject matter jurisdiction below. Second, in its motion to dismiss, CAMC noted that the "claims derive from CAMC's rendering of health care services to Plaintiff, Angela Lester." Third, we have explained that

> "[l]ack of jurisdiction of the subject matter may be raised in any appropriate manner . . . and at any time during the pendency of the suit or action." *McKinley v. Queen*, 125 W. Va. 619, 625, 25 S.E.2d 763, 766 (1943) (citation omitted). As to the appropriate manner by which the lack of subject matter jurisdiction is raised, we have said that "[l]ack of jurisdiction may be raised for the first time in this court, when it appears on the face of the bill and proceedings, and it may be taken notice of by this court on its own motion." Syl. Pt. 3, *Charleston Apartments Corp. v. Appalachian Elec. Power Co.*, 118 W. Va. 694, 192 S.E. 294 (1937)[.]

*State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W. Va. 696, 700, 619 S.E.2d 209, 213 (2005) (alterations in original).

Central to this case are two questions: (1) was there a patient involved and, if so, (2) does CAMC's handling of the fetal remains constitute "health care" within the meaning of the MPLA. Because these two questions are inextricably related under the circumstances of the present matter, we will address them together.

> The MPLA defines "medical professional liability," as
>
> > any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code § 55-7B-2(i) (eff. 2017).[8] The MPLA defines "patient" as "a natural person who receives or should have received health care from a licensed health care provider under a contract, expressed or implied." W. Va. Code § 55-7B-2(m) (eff. 2017). "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). This Court has observed that "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't*, 195 W. Va. 573,

---

[8] While the Legislature amended West Virginia Code § 55-7B-2 in 2022, the changes have no bearing on the analysis in this opinion.

9

587, 466 S.E.2d 424, 438 (1995). By the plain language of the statute, the MPLA applies when the action arises from "health care" rendered to "a patient."

The parties disagree whether this matter involves a "patient." The Lesters assert that the only possible patient was the non-living fetal remains, and that this Court's prior holdings indicate that a deceased individual does not fall within the definition of a "patient" under the MPLA. CAMC argues that the patient at issue in this case is Ms. Lester. We agree with CAMC.

In support of their position, the Lesters rely on *Ricottilli v. Summersville Memorial Hospital*, 188 W. Va. 674, 425 S.E.2d 629 (1992). In *Ricottilli*, a child died within hours of being admitted to CAMC. *Id.* at 676, 425 S.E.2d at 631. The child's mother, individually and as a representative of the child's estate, later filed a complaint against CAMC asserting a claim for outrageous conduct or negligent infliction of emotional distress and medical professional negligence based only upon conduct following the death of the child and CAMC's alleged mishandling of the child's autopsy. *Id.* CAMC moved to dismiss the claims alleging a statute of limitations bar and failure to state a claim. *Id.* Without stating the basis for its decision, the circuit court granted the motion to dismiss. *Id.*

The mother appealed. *Id.* Because the circuit court's reasoning was unclear, this Court considered both of CAMC's arguments. *Id.* Relevant to this appeal, the *Ricottilli*

10

Court examined whether the two-year statute of limitations found in the MPLA applied to the second cause of action which was grounded in negligence. *Id.* We found that "[b]y definition, a deceased individual does not qualify as a 'patient' under the Medical Professional Liability Act ('Act'), West Virginia Code §§ 55-7B-1 to -11 (Supp. 1992), and therefore cannot be the basis for a cause of action alleging medical professional liability pursuant to the Act." Syl. pt. 1, *id.* Therefore, the two-year statute of limitations pursuant to the MPLA was not applicable to the negligence claim. *Id.*

However, we find the Lesters' reliance on *Ricottilli* to be misplaced. The facts of *Ricottilli* are distinguishable because it involved the alleged mishandling of an autopsy of a *deceased prior patient*.[9] The allegations in the amended complaint in the present matter arise from the alleged mishandling of fetal remains following health care given to Ms. Lester. Consequently, we must examine whether Ms. Lester was a patient, and if so, under this narrow set of facts, whether the alleged mishandling of the fetal remains was a part of the health care services rendered to her.

Without question, Ms. Lester satisfies the definition of "patient" for the purposes of the MPLA because she is a natural person who went to CAMC for assistance

---

[9] Additionally, as discussed below, *Ricottilli* was decided prior to the Legislature's 2015 amendments broadening what is encompassed under the MPLA. While the definition of patient has not changed, we acknowledge the "changing landscape of medical malpractice cases" since the amendments. *State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 194, 866 S.E.2d 350, 360 (2021).

11

by a licensed health care provider related to the delivery of her stillborn fetus.[10] Because we find that Ms. Lester was a patient, we must next consider whether the alleged mishandling of the fetal remains constitutes health care. West Virginia Code § 55-7B-2, in relevant part, defines "health care" as:

> . . . .
>
> (2) *Any act, service,* or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to[,] or on behalf of a patient during the patient's medical care, treatment[,] or confinement, *including, but not limited to, staffing, medical transport, custodial care*[,] *or basic care, infection control, positioning, hydration, nutrition*[,] *and similar patient services*[.]

W. Va. Code § 55-7B-2(e) (eff. 2017) (emphasis added).

The plain language of the statute demonstrates its broad application. We recently examined the definition of "health care" and found that in 2015, the Legislature broadened the acts and services encompassed in that term. *See Scott*, 246 W. Va. at 192, 866 S.E.2d at 358 ("However, in 2015, the Legislature *expanded the definition* of 'health care' to include '[a]ny act, service or treatment provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment.' W. Va. Code § 55-7B-2(e)(1) (eff. 2015)." (alteration in original)

---

[10] The parties do not dispute that CAMC is a health care provider pursuant to the definition under the MPLA.

12

(emphasis added)); *Faircloth*, 242 W. Va. at 342, 835 S.E.2d at 586 ("[W. Va. Code § 55-7B-2] contains similarly broad definitions of 'health care,' 'health care facility,' and 'health care provider.'"). Given the breadth of the definition of health care, this Court has found a wide variety of acts and services to be health care for the purpose of the MPLA. *See e.g.*, *Scott*, 246 W. Va. at 195, 866 S.E.2d at 361 ("While documentation may not appear to be 'health care' in a traditional sense of the word, it does implicate the provision of 'health care' under the amended MPLA. It is not an ancillary claim, but an anchor 'health care' claim in and of itself.").[11]

CAMC obtained the fetal remains during Ms. Lester's hospitalization through the administration of health care services to its patient, Ms. Lester. CAMC came into possession of the fetal remains as a direct result of providing health care to Ms. Lester. Furthermore, after CAMC obtained the fetal remains, it continued to act on behalf of Ms. Lester in maintaining the remains in the hospital morgue on the labor and delivery floor and then transferring the remains to the funeral home for final disposition. Therefore, we find that the handling and transfer of the fetal remains was an act or service performed or furnished by a health care provider, CAMC, on behalf of Ms. Lester during her care,

---

[11] *C.f. Brown v. Ohio Valley Health Servs. & Educ. Corp.*, No. 20-0156, 2021 WL 2023532, at *3 (W. Va. May 20, 2021) (memorandum decision) (finding that the MPLA applied to the petitioners' claims even though the petitioners were not the patient involved because they stated claims for medical professional liability).

13

treatment, or confinement.[12] *See* W. Va. Code § 55-7B-2(e)(2). The limited record further supports this conclusion. CAMC did not have a separate medical record for the fetal remains, but the form releasing the remains was included in the medical record of Ms. Lester.[13]

Upon review of the amended complaint, we find that the Lesters' four enumerated counts against CAMC are subject to the MPLA. The amended complaint alleges claims of negligence, negligent infliction of emotional distress, negligent mishandling of a corpse, and negligent supervision that all arise in the context of the alleged mishandling of the fetal remains as health care services to Ms. Lester. It is of no significance that the Lesters have not explicitly pled a medical professional negligence claim because the Court looks beyond the plaintiff's labels for the causes of action. This Court has held that

> [t]he failure to plead a claim as governed by the Medical
> Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*,

---

[12] CAMC obtained the fetal remains during Ms. Lester's hospitalization and CAMC represented in its petition to this Court that Ms. Lester "remained . . . hospitalized as a patient at [CAMC] until May 21, 2018—the day of the events at issue[.]" The Lesters have not disputed this statement.

[13] This Court has previously noted that "'[a] motion under Rule 12(b)(2) of the West Virginia Rules of Civil Procedure [relating to dismissal for lack of personal jurisdiction] cannot be converted to a Rule 56 motion for summary judgement, even though a trial court considers matters outside the pleadings in deciding the Rule 12(b)(2) motion.' [Syl. pt. 4, *Easterling v. Am. Optical Corp.*, 207 W. Va. 123, 529 S.E.2d 588 (2000).] A motion for dismissal based on Rule 12(b)(1) grounds, being jurisdictional, merits the same treatment." *Elmore v. Triad Hosps., Inc.*, 220 W. Va. 154, 157 n.7, 640 S.E.2d 217, 220 n.7 (2006) (per curiam) (some alterations in original).

14

does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of "health care" as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled.

Syl. pt. 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007). *See also Damron v. Primecare Med. of W. Va., Inc.*, No. 20-0862, 2022 WL 2078178, at *3 (W. Va. June 9, 2022) (memorandum decision) ("Our precedent relative to the MPLA requires a circuit court, and this Court, to look beyond the labels of causes of action and artful pleading and instead critically examine the allegations pled to determine whether the plaintiff's complained-of conduct falls under the MPLA's provisions."). We have concluded that "the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action, not the type of claim asserted." *Blankenship*, 221 W. Va. at 702-03, 656 S.E.2d at 453-54. Applying the definitions in Section 2 of the MPLA, the Lesters' amended complaint alleges claims that fall within the definition of "medical professional liability" because the acts or omissions in question were "health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). In this case, health care services were rendered to CAMC's patient, Ms. Lester, while attending to her stillbirth.

Aside from the four enumerated counts in the amended complaint, the circuit court also found that the Lesters stated a claim for privacy violations against CAMC based upon unauthorized disclosure of medical information. Assuming without deciding that a

15

privacy claim has been sufficiently pled,[14] we find that the MPLA also applies to any

alleged unauthorized disclosure of medical information.

Prior to the 2015 amendments to the MPLA, specifically to the definition of

a "medical professional liability" claim, this Court held that,

> [t]he West Virginia Medical Professional Liability Act, codified at W. Va. Code § 55-7B-1 *et seq.*, applies only to claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. *It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability.*

Syl. pt. 3, *Boggs v. Camden–Clark Mem'l Hosp. Corp.*, 216 W. Va. 656, 609 S.E.2d 917

(2004), *superseded by statute as stated in State ex rel. PrimeCare Med. of W. Va., Inc. v.

Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019) (emphasis added). Relying on this

holding, we later concluded that allegations which pertain to the improper disclosure of

medical records do not implicate the MPLA. *See R.K. v. St. Mary's Med. Ctr., Inc.*, 229

W. Va. 712, 723, 735 S.E.2d 715, 726 (2012).

However, more recently, in *Scott*, we found that any reliance on *Boggs* is

now "misplaced" because it was decided ten years prior to the Legislature's 2015

---

[14] To be clear, the question presented by the writ of prohibition is whether the MPLA applies to the Lesters' claims, not whether those claims have been sufficiently pled. We make no findings as to whether the Lesters sufficiently pled a privacy claim in their amended complaint.

amendments to the MPLA which specifically included contemporaneous or related claims in the context of rendering health care services in the definition of a medical professional liability action. *See Scott*, 246 W. Va. at 197, 866 S.E.2d at 363. We explained the amended definition of "medical professional liability" as follows:

> Now, when a complaint contains a cause of action that meets the definition of "health care" under West Virginia Code section 55-7B-2(e), claims that are either "*related to*" or "*contemporaneous to*" the medical injury being asserted, "*all in the context of rendering health care services*," meet the definition, and are encompassed in "*medical professional liability*" as it is defined in West Virginia Code section 55-7B-2(i). The "health care" claim is the "anchor;" it gets you in the door of MPLA application to allow for inclusion of claims that are "contemporaneous to or related to" that claim, but still must be in the overall context of rendering health care services. It is not a broad stroke application that because a claim is contemporaneous to or related to health care that it falls under the MPLA. To put a finer point on it, you must have the anchor claim (fitting the definition of "health care") and then make the showing that the ancillary claims are (1) contemporaneous with or related to that anchor claim; and (2) despite being ancillary, are still in the context of rendering health care.

*Scott*, 246 W. Va. at 194, 866 S.E.2d at 360. Here, we are compelled to find that if a privacy claim was asserted based upon unauthorized disclosure of medical information through placing the fetal remains in a private vehicle with an unauthorized person, it would be contemporaneous and related to the anchor claim—handling of fetal remains as a result of a stillbirth delivery. Therefore, the MPLA applies to the Lesters' privacy violation claim as well.

Because we find that the Lesters' claims against CAMC are subject to the MPLA and there was no required pre-suit notice, we must conclude that the circuit court was deprived of subject matter jurisdiction. Section 55-7B-6(a) of the MPLA requires that, to maintain claims for medical professional liability, a plaintiff must comply with the MPLA's pre-suit notice requirements. *See* W. Va. Code § 55-7B-6(a). This Court has held that "[t]he pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction." Syl. pt. 2, *Faircloth*, 242 W. Va. 335, 835 S.E.2d 579. It is undisputed that the Lesters did not comply with the pre-suit notice requirements. Consequently, the circuit court lacked subject matter jurisdiction and should have dismissed the Lesters' claims.

## IV.

## CONCLUSION

As set forth above, this Court concludes that the circuit court erred by denying CAMC's motion to dismiss the Lesters' claims. The Lesters failed to comply with the MPLA's pre-suit notice requirements, which deprived the circuit court of subject matter jurisdiction to proceed. Therefore, we grant the petition for a writ of prohibition, vacate the circuit court's order denying CAMC's motion to dismiss, and remand this case to the circuit court with directions to enter an order dismissing the Lesters' claims against CAMC.[15]

---

[15] In *State ex rel. PrimeCare Medical of West Virginia, Inc. v. Faircloth* this Court noted that "Rule 12(h)(3) of the West Virginia Rules of Civil Procedure clearly states

18

that a circuit court must dismiss an action '[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter[.]'" 242 W. Va. 335, 345, 835 S.E.2d 579, 589 (2019) (alterations in original). We further explained that

> [w]hen such a dismissal occurs, "the medical malpractice action may be re-filed pursuant to W. Va. Code § 55-2-18 (2001) after compliance with the pre-suit notice of claim and screening certificate of merit provisions of W. Va. Code § 55-7B-6 (2003)." Syl. Pt. 3, in part, *Davis* [*v. Mound View Health Care, Inc.*], 220 W. Va. 28, 640 S.E.2d 91 [(2006)]. We note, however, that our savings statute only authorizes "a party [to] refile the action if the initial pleading was timely filed[.]" W. Va. Code § 55-2-18(a) [2001]. This ability to re-file, when such re-filing is otherwise timely, is consistent with this Court's finding that "[t]he requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." Syl. Pt. 2, in part, *Hinchman* [*v. Gillette*], 217 W. Va. 378, 618 S.E.2d 387 [(2005)].

*Faircloth*, 242 W. Va. at 345 n.24, 835 S.E.2d at 589 n.24 (some alterations in original).

19